(86 South. 113)

AMERICAN TAR PRODUCTS CO. v. JONES et al. (6 Div. 664.)

(Court of Appeals of Alabama. June 8, 1920.)

1. TRIAL ⨂═260(10) — REQUESTED INSTRUCTION AS TO NOMINAL DAMAGES PROPERLY REFUSED WHERE EMBODIED IN CHARGES GIVEN.

In action for damages to land from pollution of stream, a requested instruction. as to recovery of nominal damages only in case of uncertainty of actual damages was properly refused, where other charges given embodied the same proposition.

2. WATERS AND WATER COURSES ⨂═76—NOXIOUS ODORS AND INCONVENIENCE NOT ELEMENT OF DAMAGES FOR POLLUTION OF STREAM.

In a joint suit by several lower riparian owners for damages to land from pollution of a stream by water used in manufacture of coal tar products, noxious or disagreeable odors and the inconvenience or annoyance caused by them were not elements of damages, though evidence of the odors was admissible for purpose of ascertaining what the difference in value of the plaintiffs' property was.

3. WATERS AND WATER COURSES ⨂═68—MANUFACTURER OF COAL TAR PRODUCTS MUST NOT POLLUTE WATER UNREASONABLY.

The test of liability for damage to land from pollution of a stream by a manufacturer of coal tar products is whether the water was so polluted as to unreasonably, injuriously, unjustly, or materially affect its ordinary and extraordinary use by the lower proprietors, and test is not whether manufacturer had an up-to-date plant.

4. WATERS AND WATER COURSES ⨂═39—MANUFACTURER OBTAINING WATER FROM ONE STREAM AND DISCHARGING INTO ANOTHER NOT A RIPARIAN OWNER AS TO POLLUTION OF LATTER.

A manufacturer of coal tar products who obtained the water for use of its plant from one stream and discharged it into another is not, as regards its liability for damage to land from pollution of the stream into which water was discharged, a riparian owner.

5. TRIAL ⨂═240—INSTRUCTION AS TO RIGHTS IN RUNNING STREAM HELD ARGUMENTATIVE.

In action for damage to land from pollution of a stream, an instruction that the rights of persons to the waters of running streams are not the same under all circumstances and conditions—for instance, persons living along a running stream in thinly populated agricultural districts have a right to water in a purer state than those in a thickly populated manu-

facturing district—is properly refused as argumentative.

6. WATERS AND WATER COURSES ☞77 — INVOLVED INSTRUCTION AS TO PREVIOUS RECOVERY FOR POLLUTION OF A STREAM PROPERLY REFUSED.

In an action for damage to land from pollution of a stream by discharge of water used in manufacture of coal tar products, an instruction that if jury find from the evidence that plaintiffs had suffered all the damages that they have suffered in 1916, and that they have recovered therefor in previous suits, then they cannot recover in this case, was properly refused as involved and misleading.

7. WATERS AND WATER COURSES ☞77 — REQUESTED INSTRUCTION ESTIMATING DAMAGES FOR POLLUTION OF STREAM PROPERLY REFUSED.

In an action for damage to land from pollution of a stream, a requested instruction estimating the amount of damages done to plaintiffs' property is properly refused.

8. TRIAL ☞260(6) — REQUESTS COVERED PROPERLY REFUSED.

In action for damage to land from pollution of stream, requested instruction as to proportion to which defendant contributed to the pollution was properly refused where covered by other instructions given.

9. TRIAL ☞237(3) — INSTRUCTION AS TO DOUBT AND CONFUSION OF JURY PROPERLY REFUSED.

In action for damage to land from pollution of a stream, an instruction that if jury are reasonably satisfied from the evidence that plaintiffs were injured as a proximate result of the acts of defendant complained of, but if minds of jury are left in such a state of doubt and confusion that they cannot tell how much defendant ought to contribute to plaintiffs' damage, then finding must be for defendant, was properly refused.

10. WATERS AND WATER COURSES ☞68—DISCHARGE OF POLLUTED WATER INTO POLLUTED STREAM DOES NOT CREATE LIABILITY.

A manufacturer of coal tar products which took water from a stream, used it in its plant, and returned into the same stream in a condition no more polluted than when taken out of the stream, is not liable for damage to land from pollution of stream into which such water flowed.

11. WATERS AND WATER COURSES ☞76— MEASURE OF DAMAGES TO RIPARIAN OWNERS FOR POLLUTION OF A STREAM STATED.

In an action by several lower riparian owners to recover the proportionate damage to their property caused by defendant, one of a member contributing to the pollution, measure of damages *held* the proportionate part of the difference in the rental value of the property with the polluted stream and without the polluted stream for the year next preceding date of filing suit which the defendant caused.

12. ELECTION OF REMEDIES ☞6—CHANCERY SUIT AND ACTION AT LAW HELD NOT FOR THE SAME REMEDY, AND MOTION TO ELECT PROPERLY REFUSED.

Where pending chancery suit was to enjoin future pollution of a stream, and pending action at law for pollution was to recover damages for year preceding filing of suit, motion in law action to compel election was properly refused, as remedies were not the same.

13. APPEAL AND ERROR ☞501(3)—NO REVERSAL FOR QUESTION TO WITNESS WHERE RECORD SHOWS NO EXCEPTION OR MOTION TO STRIKE ANSWER.

Though objection was taken to a question to a witness, court will not be put in error, where record on appeal shows no exception to the question or motion to strike out answer.

14. WATERS AND WATER COURSES ☞77— VALUE OF FARMING LAND ADMISSIBLE TO SHOW DAMAGE FROM POLLUTION OF STREAM.

In action for damage to riparian land from pollution of stream, plaintiff may prove value of farming land not affected by creek conditions in order to prove the diminution in value of his own land, but defendant could not show the rental value of land similarly situated to plaintiff's land, where that took into consideration creek conditions, and plaintiff introduced no evidence showing diminution in value of any lands other than his own.

15. APPEAL AND ERROR ☞1056(1)—ERRONEOUS EXCLUSION OF EVIDENCE BEARING ON COUNTS WITHDRAWN HARMLESS.

Where, in action for pollution of a stream, the only bearing evidence as to whether defendant had an up-to-date plant could have was as to wanton injury, and counts as to such injury were withdrawn, exclusion of the evidence was harmless.

16. WATERS AND WATER COURSES ☞77—EFFECT OF STENCH FROM CREEK COULD NOT BE TESTIFIED TO BY ONE WHOSE LANDS DID NOT BORDER ON THE CREEK.

In action for damage to riparian land from pollution of a stream, question to a witness who owned land not bordering on stream as to effect of stench on ability to work his farm *held* not permissible.

17. APPEAL AND ERROR ☞1058(2)—ERROR IN SUSTAINING OBJECTION TO QUESTION HARMLESS, WHERE WITNESS FULLY TESTIFIED AS TO MATTER.

Error in sustaining objection to a question to a witness is harmless, where the witness was allowed to testify in details as to matter covered by question.

18. EVIDENCE ☞471(19)—QUESTION TO WITNESS AS TO QUALITY OF WATER HELD TO CALL FOR A CONCLUSION.

In action for damage to land from pollution of a stream, question to witness as to whether there was any difference in water in creek and as it came from defendant's plant, and which was the worse, called for a conclusion.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**19. Appeal and Error ⬯690(5)—Exclusion of Evidence not Error, Where Record does not Show it Related to Fact within the Issues.**

In action for damages to land from pollution of a stream, exclusion of evidence as to tar escaping from defendant's plant will not be held error, where record fails to show that the tar got on the land within the year preceding filing of suit, as damage for that year was all that was sued for.

**20. Waters and Water Courses ⬯77—Defendant's Liability for Pollution of Stream held for the Jury.**

In action for damage to land from pollution of a stream, case is for jury, where there was evidence tending to show that defendant's plant contributed to the pollution.

**21. Waters and Water Courses ⬯77—Immaterial Evidence in Action for Pollution of Stream Properly Excluded.**

In action for damage to land from pollution of a stream, question to witness as to when valley was settled *held* properly excluded as immaterial to issue.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by Leo Jones and others (names not given) against the American Tar Products Company for damages for the pollution of water in a stream, for creating a nuisance, and for diminishing the water in volume. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

The following charges were refused to the defendant:

Assignment 1: If after considering the evidence in this case you find that plaintiffs' land was damaged by the pollution of Valley creek, and that defendant contributed thereto with others, and you further so find that you are unable to ascertain the amount or portion of said damages this defendant caused, then you can only award these plaintiffs nominal damages.

Assignment 2: You cannot award plaintiffs any damages in this case as for any noxious or disagreeable smells arising from Valley creek during the time involved in this case.

Assignment 3: You cannot award plaintiffs any damages as for any inconvenience or annoyance suffered by the plaintiffs.

Assignment 4: If you find from the evidence that the plants of the defendant did contribute to the pollution of Valley creek, and that such plants were modern up-to-date plants and were properly operated, and that no more was done towards the pollution of said creek by the defendant than was reasonably necessary under all the circumstances, your verdict must be for defendant.

Assignment 5: If you find from the evidence in this case that the use to which the defendant put Valley creek was reasonable, when considered in connection with the fact that the district and vicinity where the alleged wrongs were perpetrated was and is a thickly populated district, in which there are large and extensive manufacturing enterprises, then your verdict must be for the defendant, and this is true even though you may find from the evidence that defendant has contributed to the pollution of Valley creek to the extent that its waters have become unfit for domestic and animal use and the odors from it have become offensive.

Assignment 6: If you find from the evidence that the defendant contributed to the pollution of Valley creek only to such an extent as was reasonably necessary under all the circumstances, then I charge you that you must find for the defendant.

Assignment 8: In a thickly populated manufacturing district manufacturing industries have the right to pollute the waters of running streams so as to render them unfit for domestic use or animal consumption, if to do so is reasonably necessary under all the circumstances.

Assignment 9: It is immaterial that the waters of Valley creek are polluted and offensive, if you find from all the evidence in this case that the defendant's use of the waters of Valley creek and its tributaries was, under all the circumstances, a reasonable use thereof.

Assignment 13: The reasonable use to which a stream of running water may be devoted in a thickly populated manufacturing district is different from the reasonable use of a like or similar stream in a rural or thinly populated section, where there are no manufacturing industries.

Assignment 7: The rights of persons to the waters of running streams is not the same under all circumstances and conditions; for instance, persons living along a running stream in thinly populated agricultural districts have a right to have the water of such stream maintained in clearer and purer state than those who live along a running stream of like kind in a thickly populated manufacturing district.

Assignment 10: If you find from the evidence that the plaintiffs had suffered all the damages that they have suffered in 1916, and that they have recovered therefor in previous suits, then they cannot recover in this case, and your verdict must be for the defendant.

Assignment 11: If you find from the evidence that plaintiffs' property was damaged to the extent of $150 by the pollution of Valley creek during the 11 months next preceding the filing of this suit, and you further find from the evidence that this defendant contributed to said pollution only 10 per cent. thereof, then you cannot lawfully render a verdict awarding plaintiff more than $15.

Assignment 12: If you are reasonably satisfied from the evidence that plaintiffs were injured as a proximate result of the acts of this defendant complained of, but your minds are left in such a state of doubt and confusion that you cannot tell how much this defendant ought to contribute to the plaintiffs' damage, then you cannot find for the defendant.

Assignment 14: If you believe from the evidence that the water turned into Possum creek by this defendant during the period alleged was not in a more polluted condition than when taken out of Possum creek for the use of this defendant, plaintiffs cannot recover.

Assignment 15: If the American Tar Prod-

ucts Company takes the water from Possum creek and uses it and turns it back into the same creek without adding to the pollution, then you must find for the defendant.

Assignment 16: If you believe from the evidence in this case that the water discharged by the defendant from its plant into Possum creek is in the same condition as to pollution as when withdrawn from Possum creek for the defendant's use, then you should find for the defendant.

Assignment 17: If you believe from the testimony in this case that the reasonable rental value of plaintiffs' farm for the year immediately preceding July, 1917, was $60 and that the reasonable rental value for the year following July, 1917, was $50, then the measure of damages which plaintiffs are entitled to recover is the proportionate part between $60 and $50 which this defendant caused by the pollution it added to Valley creek.

Knox, Acker, Dixon & Sterne, of Anniston, and Huey & Welch, of Bessemer, for appellant.

The charge set out in assignment 1 should have been given. 183 Ala. 265, 62 South. 815; 179 Ala 136, 59 South. 592; 203 Ala. 66, 82 South. 27; 126 Ala. 95, 27 South. 760; 87 Ala. 277, 6 South. 291; 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65; 104 Ala. 451, 16 South. 443. The charge made the basis of assignment 2 should have been given. 182 Ala. 633, 62 South. 40; 2 Ala. App. 652, 56 South. 830. Charge 3 should have been given. Authorities supra. On these authorities, the other charges requested should have been given. See, also, 202 Ala. 381, 80 South. 464; 29 Cyc. 156; 21 A. & E. Ency. L. 690. The charges referring to ratable pollution of the stream should have been given. Authorities supra. The charge as to the measure of damages, charge 17, should have been given. 139 Ala. 376, 35 South. 996; 158 Ala. 630, 48 South. 48; 58 Ala. 654. The court erred in not requiring plaintiffs to elect whether they would prosecute their suit to enjoin the nuisance or proceed with their damage suit. 59 Ala. 192; 5 Ala. 770; 7 Ala. 926; 1 Ala. 708; rule 112, p. 1564, Code 1907. The exceptions to evidence were proper. 169 Ala. 213, 53 South. 320, 32 L. R. A. (N. S.) 889; 42 Ala. 480; 13 Cyc. 208; Jones on Evidence, § 363. Counsel discuss other assignments of error, based on the authority above cited.

Pinkney Scott, of Bessemer, for appellees.

The fact that the plant was up-to-date does not excuse the pollution. Sections 5193 and 5198, Code 1907. The case of Stein v. Burden, 29 Ala. 127, settles the law against the contention of plaintiff in his requested charges. See, also, 12 Ala. App. 431, 68 South. 565. These also answer his proposition 10. The duty in thickly populated districts is no different from the duty in thinly populated districts. 100 Ala. 252, 14 South. 167, 46 Am. St. Rep. 48; 84 Wash. 47, 146 Pac. 163, L. R. A. 1915D, 911; 28 Vt. 459, 67 Am. Dec. 723; 1 N. D. 309, 47 N. W. 390, 10 L. R. A. 167. Counsel discusses other assignments of error, but without further citation of authority.

MERRITT, J. This was a suit by appellees, lower riparian owners, for damages for the pollution of Valley Creek. The appellant is engaged in the manufacture of coal tar products, and the water which it uses for cooling its products and other purposes is taken from Possum creek by the Woodward Iron Company and pumped through pipes to the plant of appellant. After it has passed through the plant and served appellant's purposes, the water is turned into a ditch which drains into Possum creek. Possum creek, in turn, drains into Valley creek, and Valley creek passes through appellees' land several miles below.

Only the assignments of error insisted upon in the brief of appellant will be treated in this opinion.

[1] The trial court did not commit reversible error in refusing the written charge which is made the first assignment of error, as several written charges were given by the court instructing the jury that if there was any doubt or uncertainty in regard to the amount of damages caused by this defendant they could only award nominal damages, and these charges covered the same proposition embodied in the refused charge.

[2] Written charges which are made the basis of the second and third assignments of error should have been given. This was a joint suit by the plaintiffs, and while the evidence of the odors from the creek and the effect of the odors—was admissible for the purpose of ascertaining what the difference in value of the plaintiffs' property was, yet noxious or disagreeable odors and the inconvenience or annoyance caused by them were not elements of damages. Jefferson Fertilizer Co. v. Rich et al., 182 Ala. 633, 62 South. 40.

The court properly refused written charges which are made the basis of the fourth, fifth, sixth, eighth, ninth, and thirteenth assignments of error. The law in regard to riparian proprietors is fully stated in the case of Jones v. T. C., I. & R. R. Co., 202 Ala. 382, 80 South. 464, where it is said:

"Such proprietor has the right to the extraordinary or artificial use of the stream and its waters, provided that by the use of such water it is not forced back or unreasonably or improperly precipitated on the lands of adjacent proprietors, and after its use it is restored to its natural channel without unreasonable or material diminution before it leaves the land of persons diverting or subjecting it to artificial uses, and provided, further, it is not so polluted as to unreasonably, injuriously, or. materially affect its ordinary and extraordinary

use by the proprietor of the land into which the unused waters flow by its accustomed channel."

[3, 4] It will be thus seen that the test is not whether the upper riparian owner who puts the waters of the stream to the extraordinary or artificial use has a modern, up-to-date plant, or only pollutes the water to such an extent as is reasonably necessary. The test is whether the water was so polluted as to unreasonably, injuriously, unjustly, or materially affect its ordinary and extraordinary use by the lower proprietor; and, if it is so polluted as to unreasonably, injuriously, or materially affect its ordinary and extraordinary use by the lower proprietor, the party polluting the stream is liable to the lower owner so affected. It appears from the record that the appellant was not situated on the banks of Possum creek, from which the water from its plant was taken, but that the water was taken from Possum creek, by the Woodward Iron Company and pumped over to appellant's plant. Appellant was therefore not a riparian owner, and was not entitled to the rights of a riparian owner as set out above.

[5] There was no error in the refusal of written charge which is made the basis of the seventh assignment of error. This charge was argumentative.

[6] There was no error in the refusal to give the written charge which is made the basis of the tenth assignment of error. This charge is involved, and the giving of it would only have confused the jury.

[7, 8] There was no error in the refusal to give the written charge which is made the basis of the eleventh assignment of error. The charge estimates the amount of damages done to the plaintiffs' property, and the trial court should not be required to give charges of this kind. Furthermore, the jury had already been instructed by written charges as to the proportion in which appellant contributed to the pollution of the stream.

[9] There was no error in refusing to give the written charge which is made the basis of the twelfth assignment of error. Charges predicated upon doubt or confusion in the minds of the jury are incorrect. A. G. S. R. R. Co. v. Robinson, 183 Ala. 265, 62 South. 815.

[10] In refusing written charges which are made the basis of the fourteenth, fifteenth, and sixteenth assignments of error, the trial court committed reversible error. The record shows no evidence to the effect that the water was not restored to its natural channel without unreasonable or material diminution, and plaintiffs (appellees) seem to have proceeded upon the theory that all damages were caused by the pollution of the stream. The appellant company was not liable if it did not add to the pollution of Possum creek,

and charges to this effect should have been given.

[11] There was no error in refusing written charge which was made the basis of the seventeenth assignment of error. The measure of damages in this case was the proportionate part of the difference in the rental value of the property with the polluted stream and without the polluted stream for the year next preceding the date of the filing of the suit which the defendant caused. The defendant seems to have proceeded upon the idea that it was only liable for the proportionate part of the difference between a reasonable rental value for the year in which the suit was brought and the year next preceding, caused by the pollution of the stream by the defendant. This is incorrect, as it appears from the record that the stream was polluted during both of these years.

[12] The trial court did not commit reversible error in refusing to require the plaintiffs to elect whether they would proceed with this suit or the chancery suit. The defendant showed that there was a pending suit in chancery filed against it by the plaintiffs and other parties, and sought to have plaintiffs elect whether they would proceed with the equity suit or the action at law, and to this end filed a motion. But the motion was denied by the trial court. It is only when a bill in chancery and the suit at law are prosecuted for the same claim that the plaintiff or claimant can be compelled to elect in which court he will proceed. To come within this principle the two suits must have substantially the same aim and scope. It is not enough that the two suits relate to the same subject-matter, unless the relief sought in each case is substantially the same. An examination of the bill filed in chancery discloses that its chief aim is to enjoin the defendant and others from the continued polluting of Valley creek, while the present suit is for the pollution of said stream for the year next preceding the filing of the suit. It is apparent that the relief sought in each case is not the same. Ex parte Alabama Gold Life Insurance Co., 59 Ala. 192.

[13] While the defendant objected to the question asked the witness L. W. Jones as to whether the water was fit for domestic use or fit for stock, the record shows no exception to the question or motion to exclude the answer, and the trial court will not be put in error for overruling said objection. This also applies to the questions asked said witness in regard to the rental value of the farm, and also to the question asked the witness Frank Jones in regard to the value of the land.

[14] We think it was proper for the plaintiff to be allowed to prove the value of farming land not affected by creek conditions in order to prove the diminution in value of his own land. It was not proper, however, for

the defendant to prove the rental value of land similarly situated to the plaintiffs' land, because this took into consideration the creek conditions, and plaintiff had introduced no evidence showing diminution in value of any lands other than his own.

[15] Whether the plant operated by the defendant was an up-to-date one could have had no bearing on this case, except to show that the acts of the defendant were willful or wanton, and as counts 3 and 4 were stricken before the case went to the jury, there was no issue as to willful or wanton injury, and the action of the trial court in refusing to allow defendant to show that it had an up-to-date plant was without injury.

[16-18] The court did not err in sustaining the objection to the question asked the witness McDougal: "Tell the jury whether the stench from the creek is such that you are unable to work on the farm." Plaintiffs' land bordered on the creek, while the witness McDougal testified that part of his (McDougal's) farm which was nearest the creek was a quarter of a mile distant from the creek. Nor was the defendant deprived of any testimony sought by this question, as the witness McDougal was allowed to testify in detail as to the effect the odor from the creek had on him. There was no error in sustaining the objection to the question asked the witness L. M. Crawford: "Now is there any difference in the water which comes out from the tar product plant and the creek; which is the worse?" This called for a conclusion of the witness.

[19] From the condition of the record, the trial court will not be put in error for its ruling in excluding evidence in regard to the tar escaping from defendant's plant and running over the ground and being burned off. It is not clear whether the tar referred to as getting in the creek had gotten in the creek since June, 1917, and as this is an action for damages for a period of one year immediately preceding the filing of this suit, on July 19, 1918, we are not prepared, as stated above, from the record, to say that the court erred in excluding this testimony.

[20] We are not impressed with the argument of the appellant to the effect that the affirmative charge should have been given in its favor. There was evidence tending to show that the appellant's plant contributed to the pollution of Valley creek, and, this being so, the trial court properly refused to give the affirmative charge.

[21] There was no error in the action of the court in sustaining the plaintiffs' objection to the question asked the witness O. C. Wright, "I will ask you if it is not a fact that this valley was partially settled 30 years ago?" as we can see no material bearing it would have on this case.

For the errors pointed out, the judgment must be reversed and the cause remanded.

Reversed and remanded.