Background
This appeal has its genesis in a settlement of a personal-injury action. State Farm Mutual Automobile Insurance Company ("State Farm") and its agent, Nikki Breedlove, the defendants below, settled a personal-injury claim directly with a client of Roderick Walls, a lawyer, and Walls Cooper, LLC ("WC"), Walls's law firm, the plaintiffs below. On January 24, 2002, Walls and WC filed a three-count complaint against State Farm and Breedlove in the Jefferson Circuit Court. Count one asserted a claim of intentional interference with a business relationship; count two asserted a claim of civil conspiracy; and count three asserted a claim of breach of contract.
The case went to trial during the week of October 6, 2003; however, the jury was unable to reach a unanimous decision, and a mistrial was declared. On August 8, 2005, the case was again tried before a jury. At the close of Walls and WC's case-in-chief, State Farm and Breedlove filed a motion for a judgment as a matter of law ("JML"). After hearing arguments, the trial court entered a JML for State Farm and Breedlove. The trial court issued the following order on August 9, 2005:
 "After hearing testimony from [Walls and WC] and reviewing the evidence introduced at trial during [Walls and WC's] case-in-chief, this court found that [Walls and WC] failed to meet [their] burden to prove the elements required for [their] claim of tortious interference with a business relation. Specifically, the intentional interference element. Therefore, this Court on [State Farm and Breedlove's] motion hereby ENTERS a [JML] for the Defendants, State Farm Mutual Automobile Insurance Company and Nikki Breedlove."
(Emphasis added.) Walls and WC filed a motion to alter, amend, or vacate the judgment. The trial court denied this motion on September 26, 2005. This appeal followed.
 Standard of Review "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no *Page 414 
presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Waddell Reed, Inc. v. United Investors Life Ins.Co., 875 So.2d 1143, 1152 (Ala. 2003).
 Analysis
Walls and WC raise one issue to this Court: "Whether [Walls and WC] presented substantial evidence of [State Farm and Breedlove's] intentional interference with a business relationship where the record reveals that Defendant Breedlove told [Walls and WC's] client that [State Farm and Breedlove] would settle the client's claim directly with the client if the client terminated the contract between [Walls and WC] and the client." Walls and WC's brief at 6.
The tort of intentional interference with a business relationship comprises five elements. The plaintiff alleging intentional interference with a business relationship is required to prove:
 1. The existence of a contract or a business relation;
 2. The defendant's knowledge of the contract or business relation;
 3. Intentional interference by the defendant with the contract or business relation;
 4. The absence of justification for the defendant's interference; and
 5. Damage to the plaintiff as a result of the defendant's interference.
Waddell Reed 875 So.2d at 1153 (citingParsons v. Aaron, 849 So.2d 932, 946 (Ala. 2002)).
Walls and WC allege that State Farm and Breedlove intentionally interfered with a business relationship that existed between Walls and WC, on the one hand, and their client, on the other. Walls and WC's brief at 11. State Farm and Breedlove state that, before Breedlove initiated the contact with Walls's client, the client had already dismissed Walls as her attorney by sending Walls a letter terminating his employment because, they say, he had not been communicating with her. State Farm and Breedlove's brief at 5. Walls and WC stated that before Breedlove initiated contact with the client, they had not sent a letter of disengagement to State Farm and Breedlove indicating that they were no longer representing the client in the personal-injury action. Walls and WC's brief at 6. Walls and WC state "that the record contains substantial evidence establishing the intentional-interference element of their claim." Walls and WC's brief at 11. In the instant case, Walls testified that Breedlove initiated the contact with his client to induce her to terminate her contract with Walls and WC. Walls further testified that Breedlove told the client that Breedlove would settle the client's personal-injury claim directly with the client if she fired Walls and WC, her lawyers. Walls alleges that Breedlove "offered to settle [the client's] claim directly with her, to [Walls and WC's] detriment, if [the client] would terminate her contract with [Walls and WC]." Walls and WC's brief at 12.
Walls and WC contend that, in Ex parte Henderson,732 So.2d 295, 298 (Ala. 1999), this Court "noted that a showing of a `strong financial motive on the part of the defendants' supports a finding of intentional interference." Walls and WC's brief at 12. Walls testified that based on his experience he calculated that his client's claim had a value of about $25,000. State Farm and Breedlove settled the claim with the client for $4,500. Walls testified that State Farm and Breedlove were motivated to settle the personal-injury claim directly *Page 415 
with the client in order to save State Farm money.
Walls and WC's argument is simply that State Farm, through its agent, Breedlove, induced the client to fire Walls and WC so that they could settle the personal-injury action with the client directly. Evidence of Breedlove's conversation with the client, prior to the client's writing the letter to Walls terminating his employment, is substantial evidence creating a factual dispute as to whether State Farm and Breedlove intentionally interfered with the relationship between Walls and WC and their client, an issue requiring resolution by the jury. State Farm and Breedlove fail to refute this testimony in their brief on appeal and, instead, focus on what occurred after the client sent the letter.
Based upon our review of the evidence presented at trial, we find that Walls and WC "produced substantial evidence creating a factual dispute requiring resolution by the jury." Waddell Reed, 875 So.2d at 1152 (citing Carter v.Henderson, 598 So.2d 1350, 1353 (Ala. 1992)). Therefore, the judgment of the trial court is reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
MURDOCK, J., concurs in the result.